UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROLYN MARY DAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01028-TWP-MPB |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Carolyn Mary Dawson ("Dawson") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I.   BACKGROUND

**A.   Procedural History**

On October 9, 2012, Dawson filed an application for DIB, alleging a disability onset date of October 8, 2012, due to fibromyalgia, bone spurs, neuropathy, arthritis, carpal tunnel syndrome, bursitis, chronic fatigue, migraines, hypertension, and back and neck impairments. Her application was initially denied on December 21, 2012, and again on reconsideration on February 27, 2013. Dawson filed a written request for a hearing on April 1, 2013. On January 15, 2014, a hearing was

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

held before Administrative Law Judge Mark C. Ziercher (the "ALJ"). Dawson was present and represented by counsel. Ray Burger, an impartial vocational expert, appeared and testified at the hearing. On March 26, 2014, the ALJ denied Dawson's application for DIB. Following this decision, Dawson requested review by the Appeals Council on April 22, 2014. On April 30, 2015, the Appeals Council denied Dawson's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On June 30, 2015, Dawson filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

B.     **Factual Background**

At the time of her alleged disability onset date, Dawson was 57 years old, and she was 58 years old at the time of the ALJ's decision. Dawson is currently 61 years old. Dawson completed her high school education and took some college courses. Prior to the onset of her alleged disability, Dawson had an employment history of working as a sales clerk, a sales representative, and a plasma donor processor. She continued working as a plasma donor processor after her alleged disability onset date of October 8, 2012, into the first quarter of 2013, but this work did not rise to the level of substantial gainful activity.

The Court focuses on Dawson's impairment of fibromyalgia because this impairment is the primary focus of Dawson's request for reversal of the ALJ's decision and remand for further consideration. Dawson was diagnosed with fibromyalgia in 1986, and she has had periods of time where she received treatment for the condition. She has occasionally received steroid shots and has often taken various medications to address her fibromyalgia.

Dawson has been regularly seeing her primary care physician, family medicine specialist Mark A. Litz, M.D. ("Dr. Litz"), for a number of years. Dr. Litz has treated Dawson for numerous

impairments and illnesses, including fibromyalgia. Dr. Litz has treated Dawson for widespread pain throughout the fibromyalgia tender points, intermittent stress headaches, TMJ-related pain, gastrointestinal issues, and other ailments. Dr. Litz's diagnostic impression consistently has included fibromyalgia throughout his treatment notes, and his review of systems consistently has referenced widespread pain, diffuse tenderness in trigger points, fatigue, weakness, malaise, and decreased activity tolerance. For example, at a December 2011appointment, Dr. Litz noted in the medical record that Dawson had widespread pain, fatigue, moderate pain in the fibromyalgia tender points, and that trigger point tenderness was diffusely presenting (Filing No. 13-1 at 101). Similar notes regarding Dawson's fibromyalgia were included in Dr. Litz's treatment records when he saw Dawson in July 2012 (*id.* at 88), September 2012 (*id.* at 84), and February 2013 (*id.* at 134).

In 2012, Dawson received treatment from a pain specialist, Miriam Ibrahim, M.D. ("Dr. Ibrahim") (Filing No. 13-1 at 50–59). Each of Dr. Ibrahim's treatment records noted Dawson's diagnosis of fibromyalgia. Dawson met with Dr. Ibrahim to address her widespread pain on January 16, 2012. They discussed Dawson's fibromyalgia, and Dawson explained that she had experienced back pain, so she had back surgery in August 2010. Dawson explained that it took her nine months to recover from the back surgery, and once the back pain from the surgery started getting better, she started having pain and achiness all over her body. This widespread pain occurred daily and was a 7 on a scale of 1 to 10. The pain was both above and below the waist and on both sides of her body. Dawson also experienced fatigue and tiredness (Filing No. 13-1 at 54). After conducting a physical examination, Dr. Ibrahim noted, "[e]xamination of the tender points of fibromyalgia revealed the patient to have 14 of the 18 tender points." (Filing No. 13-1 at 55.) After Dawson's office visits on February 9, 2012 and March 21, 2012, Dr. Ibrahim continued to note her fibromyalgia as an ongoing diagnosis.

In April 2013, after Dawson had filed her application for DIB, she was seen by a rheumatologist, Tarek Kteleh, M.D. ("Dr. Kteleh") (Filing No. 13-1 at 145–46). Dr. Kteleh noted that Dawson suffered diffuse pain and achiness in her muscles and joints, especially in her shoulders, neck, back, and knees. Dr. Kteleh recorded his medical impression, "Fibromyalgia: [Dawson] does have diffuse pain and positive trigger points for fibromyalgia," and "had negative RF, ANA and ESR" testing to rule out other possible causes for her fibromyalgia symptoms (Filing No. 13-1 at 146). Dr. Kteleh prescribed fibromyalgia medication to Dawson for her treatment and recommended exercise and warm water therapy.

As part of the disability review process, a disability doctor, Rey Arenas, M.D. ("Dr. Arenas"), conducted a physical consultative examination of Dawson in December 2012 (Filing No. 13-1 at 116–22). Dr. Arenas noted Dawson's diagnosis of fibromyalgia, and performed a physical examination. Dr. Arenas' examination of Dawson revealed diffusely limited range of motion in the cervical and lumbar spine, shoulders, knees, and hips. He observed Dawson's pain in all extremities upon movement and a sensitivity to touch. Dawson had a stooped posture, unsteady gait, and diminished speed and instability. She was unsteady on standing and walking. She needed assistance with getting on and off the examination table. She also needed assistance from Dr. Arenas and a chair when walking to the examination table. She had obvious signs of fatigue and pain on examination. Dawson was unable to walk on her heels or toes or tandem walk or squat. She had abnormal motion on walking and turning her head due to pain. She had abnormal straight leg raising results in both the sitting and supine positions. She also had weak muscle strength and tone as well as pain all over, especially on her thighs. Her strength was limited to four out of five in all extremities. *Id.*

There is additional evidence throughout the record that indicates Dawson experienced neuropathy, chronic fatigue, carpel tunnel syndrome, and degenerative disc disease, and she sought various treatments for these impairments.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). I n reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold

an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Dawson met the insured status requirement of the Act for DIB through December 31, 2016. The ALJ then began the five-step analysis. At step one, the ALJ found that Dawson had not engaged in substantial gainful activity since October 8, 2012, the alleged disability onset date. The ALJ noted that, while Dawson had some work activity in early 2013 after the disability onset date, the work did not rise to the level of substantial gainful activity. At step two, the ALJ found that Dawson had the following severe impairments: peripheral neuropathy, chronic fatigue, bilateral carpel tunnel syndrome, and cervical degenerative disc disease. Also at step two, the ALJ stated that Dawson did not have a medically determinable impairment of fibromyalgia. At step three, the ALJ concluded that Dawson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Dawson had an RFC to perform light work with the following additional limitations:

> She can stand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently bilaterally handle and finger. Regarding the neck, she can perform flexion, extension, and rotation frequently. She can perform goal-oriented rather than production-oriented work. She can perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks.

(Filing No. 13 at 24).

At step four, the ALJ determined that Dawson was able to perform her past relevant work as a plasma donor processor because the demands of this past work were within Dawson's RFC according to the vocational expert's opinion. Because the ALJ determined that Dawson could perform her past relevant work, the ALJ did not proceed to step five of the sequential evaluation process. Having determined that Dawson could perform her past relevant work, the ALJ also determined that Dawson was not disabled. Therefore, the ALJ denied Dawson's application for DIB because she was not disabled.

## IV. DISCUSSION

In her request for judicial review, Dawson asserts two arguments. First, she argues the ALJ erred by failing to properly account for and analyze the record evidence of her fibromyalgia at Step 2, which then led to erroneous considerations and conclusions at the subsequent steps of the sequential evaluation process. Second, Dawson asserts that the ALJ improperly assessed her credibility by not analyzing and citing to record evidence and by improperly determining there was a lack of objective evidence of her fibromyalgia. Dawson also briefly argues that the ALJ erred by equating limited daily activities with fulltime employment activities and by failing to indicate what weight was given to the opinion of Dr. Arenas, the state agency consultative examiner.

8

The Court first addresses Dawson's argument that the ALJ erred by failing to properly account for and analyze the record evidence of her fibromyalgia at Step 2. Dawson further asserts that the ALJ's error at Step 2 then led to erroneous considerations and conclusions at the subsequent steps of the sequential evaluation process. Dawson explains that the ALJ entirely ignored the record evidence regarding her fibromyalgia, simply recited the SSR 12-2p criteria for evaluating fibromyalgia, and then without any analysis, perfunctorily stated, "[u]nder these examination protocols, the medical evidence does not contain sufficient material to establish fibromyalgia as a medically determinable impairment." (Filing No. 13 at 23.)

The Commissioner responds to Dawson's argument by claiming that the ALJ's decision was supported by substantial evidence and that the ALJ addressed at later steps in the analysis the underlying medical records of the treating and consulting physicians who found that Dawson had fibromyalgia. The Commissioner argues that this is sufficient. Therefore, the Commissioner asserts, the ALJ's decision is supported and should be affirmed.

After reviewing the decision of the ALJ, the Court points out that at Step 2 of the evaluation process the ALJ simply noted that a diagnosis of fibromyalgia was present in the medical evidence and then quoted at length the criteria for evaluating fibromyalgia under SSR 12-2p. After the ALJ's lengthy recitation of the SSR criteria, he simply asserted that "[u]nder these examination protocols, the medical evidence does not contain sufficient material to establish fibromyalgia as a medically determinable impairment." (Filing No. 13 at 23.) The ALJ provided no analysis. There was no evaluation. No record medical evidence was mentioned, discussed, considered, or reviewed. The ALJ provides no "logical bridge" or "path of reasoning" for the Court to follow.

While the ALJ "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the

9

evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). The ALJ's decision provides no "path of reasoning" for the Court to "trace" regarding the Step 2 determination that fibromyalgia is not a medically determinable impairment suffered by Dawson. This shortcoming requires remand.

Additionally, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

As noted above, Dr. Litz treated Dawson for fibromyalgia and noted in the medical record that Dawson had widespread pain, fatigue, moderate pain in the fibromyalgia tender points, and that trigger point tenderness was diffusely presenting. These notes were recorded in December 2011, July 2012, September 2012, and February 2013 (Filing No. 13-1 at 101, 88, 84, 134). Dr. Ibrahim, a pain specialist, noted Dawson's widespread pain that occurred daily and was a 7 on a scale of 1 to 10. Her pain was both above and below the waist and on both sides of her body, and she experienced fatigue and tiredness. After conducting a physical examination, Dr. Ibrahim noted, "[e]xamination of the tender points of fibromyalgia revealed the patient to have 14 of the 18 tender points." (Filing No. 13-1 at 55.)

After his examination of Dawson, Dr. Kteleh (a rheumatologist) noted that Dawson suffered diffuse pain and achiness in her muscles and joints, especially in her shoulders, neck, back, and knees. Dr. Kteleh recorded, "Fibromyalgia: [Dawson] does have diffuse pain and positive trigger points for fibromyalgia," and "had negative RF, ANA and ESR" testing to rule out other possible causes for her fibromyalgia symptoms (Filing No. 13-1 at 146). Finally, Dr. Arenas conducted a physical consultative examination of Dawson and noted her diagnosis of fibromyalgia

with diffusely limited range of motion in the cervical and lumbar spine, shoulders, knees, and hips. He also noted Dawson's pain in all extremities upon movement and a sensitivity to touch. Dr. Arenas observed obvious signs of fatigue and pain on examination (Filing No. 13-1 at 116–22).

None of these facts were mentioned, analyzed, or discussed in the ALJ's decision when he determined that the medical evidence did not contain sufficient material to establish fibromyalgia as a medically determinable impairment. It appears that the ALJ "ignor[ed] evidence that points to a disability finding" and "simply cherry-pick[ed] facts that support a finding of non-disability." *Denton*, 596 F.3d at 425. This error serves as another basis for remanding this case for further consideration.

As the Court noted above, the combined effect of all the impairments of the claimant must be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). By completely ignoring fibromyalgia at Step 2, the ALJ also failed to account for it throughout the rest of the evaluation process. It was not considered at Step 3, during the RFC determination, or at Step 4.

The Court also notes that the ALJ determined that Dawson suffered from chronic fatigue as a severe impairment. However, the ALJ failed to discuss, mention, or analyze in any way Dawson's chronic fatigue at Step 3, and thus, the Court is left to speculate whether this impairment was considered at all during that part of the disability evaluation. *See* Filing No. 13 at 24.

Because the Court determines that remand is necessary based on the first argument presented by Dawson, the Court only briefly addresses Dawson's additional arguments regarding the credibility assessment and failing to indicate what weight was given to the opinion of Dr. Arenas. Upon review of the ALJ's decision, the Court determines that the ALJ failed to take into consideration Dawson's fibromyalgia and the evidence supporting that impairment when assessing

Dawson's credibility. On remand, the ALJ should account for Dawson's fibromyalgia when making the credibility determination.

Additionally, the ALJ did not indicate what weight he gave to the opinion of Dr. Arenas, the state agency consultative examiner. While the ALJ discussed Dr. Arenas's consultative examination in his decision, the ALJ did not explain the weight given to Dr. Arenas's opinions or the reasons for such weight. While this shortcoming may have been harmless in this case, because the Court is remanding the case for further consideration, the ALJ should further explain the treatment of Dr. Arenas's opinion on remand.

### V.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/31/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy E. Staggs
ARNHOLT & STAGGS LAW OFFICE
tim@arnholtandstaggs.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov